IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **MTF ENTERPRISES, LLC,** | : | |
| | : | |
| Debtor. | : | Bankruptcy No. 26- 10237 |
| | : | |

## DECLARATION OF MICHAEL FAY IN SUPPORT OF FIRST DAY MOTIONS FILED BY THE DEBTORS

Michael Fay, a member and manager of each of the Debtor entities, makes the following Declaration in Support of the First Day Motions:

1. The Debtor Entities are MTF Holdings, LLC (6159), MTF Enterprises, LLC (3929), MTF Ventures, LLC (2811), MTF Management, LLC (5541), MTF Group, LLC (7408) and MTF Childcare, LLC (3134) (hereinafter referred to collectively as the "Debtor Entities").

2. The Debtor Entities, other than MTF Childcare, operate forty-four (43) franchised Subway ® locations at leased properties in Pennsylvania, New Hampshire, Maine and Virginia. A list of the locations is attached hereto as Exhibit "A". MTF Childcare operates, before, after and enrichment care at multiple school locations in Washington DC, Connecticut, Virginia and New York providing care to over 1450 children.

3. MTF Holdings, LLC, the lead Debtor, is a Pennsylvania Limited Liability Company, as well as MTF Enterprises, LLC. The remaining Debtor Entities are Limited Liability Companies formed under the laws of the State of Louisiana and are affiliated with the lead Debtor.

4. The Debtor Entities, other than MTF Childcare, are parties to Lease Agreements at all 43 locations with third party landlords. MTF Childcare has facility agreements for use of space in the schools at which it provides its enrichment programs.

5. The Debtor Entities, either directly or under the name of Michael Fay, member, are parties to franchise agreements with Doctor's Associates, Inc. for each of the Subway ® locations.

6. The Debtor Entities pay a bi-weekly payroll for 247 employees as follows: MTF Holdings, LLC (PA) – 29 employees, $22,512. MTF Enterprises, LLC (PA) – 50 employees, $49,868, MTF Ventures, LLC (VA) – 68 employees, $50,192, MTF Management, LLC (ME) – 70 employees, $59,517, MTF Group, LLC (ME/NH) – 30 employees, $40,621. MTF Childcare has 73 employees with a biweekly payroll ranging from $45,00 to $52,000 depending on the month.

7. Payroll is paid once every two weeks, with one week in arrears. Workers compensation insurance is paid with each payroll.

8. The Debtor Entities are current on payroll, payroll taxes and benefits.

9. The officers of the Debtor Entities and their salaries are as follows:

   a. Michael Fay, President. Salary $150,000.

   b. Michael MacDonald, Chief Strategy Officer. $150,000, of which $100,000 is paid by MTF Childcare and the balance by the remaining Debtor Entities.

   c. Melanie Walsh, Chief Financial Officer. Wages are based on $200/hour. Fractional CFO.

   d. Rhondalyne Reed, Chief Talent Officer. $140,000.

10. Attached as Exhibit "B" hereto are the last annual and most recent monthly combined financial statements of the Debtor Entities.

11. The Debtor Entities are parties to multiple lending agreements as will be discussed herein. Attached hereto as Exhibit "C" are searches of the states of formation for any filed UCC financing statements or liens.

12. MTF Management LLC is party to a tax repayment agreement with the State of Maine for sales tax. A copy of that agreement is attached as Exhibit "D"

13. The Debtor Entities have three primary food vendors who are designated by the franchisor. Those vendors are US Foods, Inc., Sysco Food Service, Inc, and Performance Food Group, Inc. The Debtor Entities pay each vendor on a week to week basis for all current orders. The Debtor Entities also pay Sysco Food Services, Inc. a weekly payment of approximately $6000 in addition to satisfy a pre-petition balance of $98,000.

14. The Debtor Entities are parties to various loans and financing arrangements which are set forth on Exhibit "E". The Debtor Entities aver that the United States Small Business Administration has a first lien on most assets. The dates of all other liens are as represented on Exhibits "C" and "E".

15. Prior to the Petition Date, the Debtor Entities received funds from Merchant Cash Advance lenders as indicated on Exhibit "E". The continued cash drain caused by the weekly and daily draws has been the primary cause of the Debtor Entities' financial problems.

16. The Debtor Entities do not have accounts receivable, only maintain a minimal inventory and any equipment or tenant improvements are secured by various lenders with liens at specific locations.

17. As a result, the Debtor Entities aver that the Merchant Cash Advance lenders, Ocean Funding and the short term lender, Web Bank, are wholly unsecured and not entitled to any future payments as secured creditors.

18. Unfortunately, the Merchant Cash Advance lenders improperly seized or interfered with the collection of sales revenue from Square/Door Dash ®, American Express and Stripe. A copy of the lien notices in possession of the Debtor are attached as Exhibit "F"

19. The Debtor Entities, other than MTF Childcare, have prepared a cash flow, attached as Exhibit "G" which provides for the post-petition payment of food vendors, employees and employee related expenses (taxes and benefits), lease payments, and other occupancy costs. The Debtor Entities have also included weekly deposits of $10,000 to cover post-petition legal fees of Debtor's counsel. The Debtor Entities believe the cash flow set forth in Exhibit "G" provides a reasonable prospect of a reorganization and the preservation of almost 247 jobs. The cash flow shows the Debtor making current rent payments starting with February rent. MTF Childcare has prepared the cash flow attached as Exhibit "H".

20. Pursuant to franchise agreements the Debtor Entities participate in various loyalty programs as part of the Subway ® system. The Debtor Entities are current on all obligations to Subway ® and all gift card obligations. As a point of clarity, the day any of the Debtor Entities sells a gift card, the funds received on account of the gift card are immediately withdrawn and sent to the franchisor. Whenever any of the Debtor Entities honor a gift card, the Debtor receives those funds on a daily basis from the processor.

21. The Debtor Entities have in place insurance for all locations and copies of the Certificates of Insurance are available from counsel to the Debtor Entities.

22. Copies of all Lease Agreements and Franchise Agreements are in the possession of counsel to the Debtor Entities.

23. The Debtor Entities have utility services at each of its locations. The Debtor is behind with some or all utility services. All utility services are critical to the reorganization of the Debtor Entities. The cash flow attached as Exhibit "G" includes payment for all post-petition utilities.

## MOTION TO HONOR FRANCHISE AGREEMENTS AND LOYALTY PROGRAMS

24. The franchise agreements and associated loyalty programs of which the Debtor Entities are a party are necessary to the reorganization of the Debtor Entities. Each location is a custom designed Subway ® location. There is no current cure amount due to the franchisor and no gift card liability.

25. The Debtor Entities honor all promotions and marketing campaigns and are otherwise compliant with their obligations under each of the franchise agreements.

26. The Debtor Entities aver the franchise agreements are market based and provide a substantial benefit to each Debtor entity.

27. Pending confirmation of the Plan, the Debtor Entities seek authorization to honor the franchise agreements and all loyalty programs with Doctors Associates, Inc.

## MOTION UNDER 11 U.S.C. SECTION 366 FOR CONTINUED UTILITY SERVICE TO ALL LOCATIONS

28. The Debtor Entities have filed a Motion pursuant to Section 366 of the Bankruptcy Code to require continuous utility service to all locations (the "Utility Motion").

29. The Debtor Entities are making all post-petition payments to all utility providers and are agreeing to make deposits of one month of service paid over sixty days in two installments.

30. The Debtor Entities aver that the current utility payments in the cash collateral budget, Exhibit "G", and the deposits provided in the Utility Motion provide adequate protection to each utility provider.

## MOTION FOR JOINT ADMINISTRATION

31. The six Debtor Entities maintain separate books and records and lists of creditors and file separate tax returns.

32. Each of the Debtor Entities maintains a separate existence but operates in conjunction with each other Debtor Entity.

33. There are common creditors among the Debtor Entities.

34. Senior management of the Debtor Entities manages all of the Debtor Entities.

35. The cash flow on Exhibit G is a combined cash flow of the entities operating Subway ® restaurants. Exhibit H is the cash flow of MTF Childcare.

36. The Debtor Entities aver that joint administration will assist in the reorganization of the Debtor Entities by allowing pleadings to be filed under on docket number and name.

## MOTION TO PERMIT ORDINARY COURSE PAYMENTS TO FOOD VENDORS

37. The Debtor Entities have three primary food vendors.

38. The Debtor Entities are within 3 and 7 day terms with no arrearage with US Foods, Inc. and Performance Food Group, Inc.

39. The Debtor Entities have an arrearage of $98,000 with Sysco Food Services, Inc. and a weekly spend of $50,000. The Debtor Entities have generally paid $6000 on account of the arrearage weekly.

40. The Debtor Entities desire to continue their current arrangement with each of the food vendors.

41. The food vendors are each mandated by the franchisor.

42. To the extent the food vendors are providing fresh produce, the Debtor Entities can avoid PACA claims and liens under Perishable Agricultural Commodities Act.

43. Maintaining the weekly payments for current deliveries for each of the food vendors will benefit the estate by minimizing disruption and avoiding PACA liens.

44. The pre-petition balances are nominal compared to the weekly spend with each food vendor and are primarily for deliveries within twenty days of the Petition Date.

## MOTION FOR AUTHORITY TO PAY PRE-PETITION WAGES

45. The Debtor Entities have almost 320 employees who are paid biweekly.

46. Payroll is funded depending on the entity on each Tuesday and Wednesday.

47. Because payroll is calculated with one week of arrears, there will be a pre-petition payroll of at least fourteen days depending on the day the Debtor Entities file.

48. No one employee will receive pre-petition payroll in excess of the priority amount under the Bankruptcy Code.

49. There are no insiders receiving payroll other than Michael Fay, who will not receive any unpaid pre-petition wages under this order.

50. The employees are the lifeblood of the Debtor Entities. They are the face of the organization and critical to the successful reorganization of the Debtor Entities.

51. Payment of pre-petition wages is necessary and critical to the Debtor Entities' reorganization effort.

## MOTION FOR USE OF CASH COLLATERAL AND TURNOVER OF CASH COLLATERAL

52. Exhibits G and H represent a comprehensive cash flow budget of the Debtor Entities providing full payment of all post-petition expenses, lease payments and franchise fees.

53. With the onerous and predatory Merchant Cash Advance payments removed from cash flow, the Debtor Entities can operate and responsible determine the best path forward.

54. The budget contains payments to all lessors and employee related items, adequate protection payments to the SBA, a reserve for legal fees and all other costs of operation such as insurance and utilities.

55. Use of cash collateral pursuant to the budget will allow the Debtor Entities the space and ability to reorganize and preserve 247 jobs and 43 store locations and another 73 employees at multiple locations providing services to 1450 children.

56. The continuation of insurance, maintenance of all locations and payment of franchise obligations provides the best path forward for the Debtor Entities and their creditors.

57. Use of cash collateral pursuant to the budget will result in an increase in net cash and preservation of the estate, all of which, along with adequate protection payments to the SBA provide all parties with interest in cash collateral adequate protection.

58. The Debtor Entities specifically request turnover of all withheld or diverted payments from Stripe, Square and American Express and an order which specifically requires each to turnover to the Debtor Entities all withheld funds and all future funds.

## MOTION FOR AUTHORITY TO USE PRE-PETITION BANK ACCOUNTS

59.     The Debtor Entities currently bank at the institutions and with last four of any account number on the schedule attached as Exhibit "I".

60.     The Debtor Entities receive a substantial amount of funds through credit card processing for which the redirection of those funds to new accounts with amended processor agreements has a substantial negative risk for cash flow.

61.     The Debtor Entities request authority with appropriate safeguards to continue to use the pre-petition bank accounts.

Dated: 01 / 20 / 2026            _MTF_____
                                 Michael T. Fay